The Honorable Robert Graham Governor State of Florida The Capitol Tallahassee, Florida 32301
Dear Governor Graham:
This is in response to your request for an opinion on substantially the following question:
 DOES THE ASSERTION, BEFORE A DULY SEATED FEDERAL GRAND JURY, OF THE PRIVILEGE AGAINST SELF-INCRIMINATION PROVIDED BY THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION ESTABLISH A BASIS FOR SUSPENSION FROM OFFICE OF A STATE ATTORNEY BY THE GOVERNOR PURSUANT TO SECTION 7, ARTICLE IV OF THE FLORIDA CONSTITUTION?
Your inquiry notes that E.J. Salcines, the State Attorney for the Thirteenth Judicial Circuit, has informed your office that recently when called on to testify before a federal grand jury presently sitting in Tampa, he asserted his privilege to refuse to answer questions on the basis of the Fifth Amendment of the United States Constitution which provides that "no person shall be compelled in any criminal case to be a witness against himself . . . ."
Mr. Salcines has further confirmed that, on a second occasion, he was subpoenaed to appear before the same grand jury. Pursuant to an agreement with Robert Merkle, the United States Attorney for the Middle District of Florida, Salcines indicated in writing that if he were to appear, he would not answer questions, but would assert the same Fifth Amendment privilege described above. As a result, the subpoena has not been enforced and Salcines has not appeared before the grand jury.
I understand from newspaper articles reporting on press conferences with your office, and from conversations by my staff with the legal staff of your office that your legal staff is of the opinion that the Governor has no authority to suspend in this instance. For the following reasons, we are in agreement with that position, and accordingly, your question is answered in the negative.
The Florida Constitution provides in s 7(a), Art. IV:
 By executive order stating the grounds and filed with the secretary of state, the governor may suspend from office any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony, and may fill the office by appointment for the period of suspension. The suspended officer may at any time before removal be reinstated by the governor. (e.s.)
Subsection 7(b) of Art. IV provides that the "senate may, in proceedings prescribed by law, remove from office or reinstate the suspended official and for such purpose the senate may be convened in special session . . . ." See also, ss 112.40-112.48, F.S. (statutory implementation of subsection 7[b]. In particular note s112.41(1) (providing that the Governor's order of suspension "shall specify facts sufficient to advise both the officer and the Senate as to the charges made or the basis of the suspension") and s 112.42 (providing that the Governor may suspend any officer on "any constitutional ground for such suspension that occurred during the existing term of the officer . . ."). (e.s.)
In State ex rel. Hardie v. Coleman, 155 So. 129 (Fla. 1934),[1]
the Florida Supreme Court held under s 15, Art. IV of the 1885 Const., that the Governor's suspension order is sufficient if it states one or more constitutional grounds and supports the statement with alleged facts sufficient to constitute the grounds or cause of suspension. Accord, Bass v. Askew, 342 So.2d 145 (1 D.C.A.Fla., 1977). The Hardie case refers to the matters and things on which the executive grounds his cause of removal as "jurisdictional facts." See also, State ex rel. Hardee v. Allen,172 So. 222 (Fla. 1937), and Crowder v. State ex rel. Baker,285 So.2d 33 (4 D.C.A.Fla., 1973); In re Advisory Opinion to the Governor, 196 So.2d 737 (Fla. 1967). Hardie also held that the Governor's power of suspension must be limited to the grounds stated in the Constitution, 155 So. 127 at 134, that s 15 of Art. IV of the 1885 Const., defines the "complete scheme under which the power of removal is accomplished . . .," and further that the "power of the Governor to suspend [is] . . . guarded by constitutional limitations which should be strictly followed." (e.s.) 155 So. at 135.
Thus, the Governor may suspend only for those grounds specified in the Constitution, namely: Malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony. See, for an application of the rule expressio unius est exclusio alterius to a provision of our State Constitution, Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1974); In re Advisory Opinion of the Governor Civil Rights, 306 So.2d 520 (Fla. 1975). Additionally, it is an established principle that if the Constitution expressly provides the manner of doing a thing, it impliedly forbids its being done in a substantially different manner. Weinberger v. Board of Public Instruction, 112 So. 253
(Fla. 1927).
I am not aware of any Florida decision which has treated and decided the issue posed by your inquiry. In In re Advisory Opinion to the Governor, 196 So.2d 737 (Fla. 1967), a similar question was presented to the Supreme Court, but the Court declined to answer because of its view that in light of the ex parte nature of an advisory opinion, it would be premature and improper and that out of concern for the separation of powers doctrine, preliminary judicial scrutiny of the jurisdictional facts upon which a Governor proposed to ground an order of suspension would be an assumption of power neither contemplated nor authorized by the Constitution. In a similar vein, this office is without authority to make such "judicial" factual determinations or, indeed, to determine any mixed questions of fact and law. However, my review and analysis of the express basis or grounds enumerated in s 7, Art. IV of the State Const., leads me to believe that the mere assertion of the constitutionally granted privilege against self-incrimination before a federal grand jury does not per se establish a constitutional basis or ground for suspension from office of a state officer subject to s 7, Art. IV of the State Const. Mere assertion of this constitutional right, without more, does not constitute an unlawful act. See, U.S. Const., AmendmentV, providing in pertinent part "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." See also, Lefkowitz v. Turley, 414 U.S. 70 (1973) (holding that theFifth Amendment privilege against compelled self-incrimination is available to witnesses before the grand jury); Sanitation Men Assoc. Inc. v. Commissioner, 392 U.S. 280 (1968) (holding that public employees are entitled to assert the privilege against self-incrimination, and that the states cannot force such public employees to relinquish this right under penalty of loss of employment); Gardner v. Broderick, 392 U.S. 273 (1968) (holding that a police officer could not be discharged solely for his refusal to forfeit the rights guaranteed him by theFifth Amendment); Lefkowitz v. Cunningham, 431 U.S. 801 (1977) (striking down a New York statute which coerced forfeiture of the right to participate in political associations as a price for asserting the privilege against self-incrimination, and noting that citizens may not be forced to incriminate themselves because it serves a governmental need); Garrity v. New Jersey, 385 U.S. 493 (1967) (noting that the privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent to a confession of guilt, and holding that the constitutional protection against coerced confessions prohibits the use in later criminal proceedings of confessions obtained from public officers under a threat of removal from office). I do not perceive that this conduct constitutes malfeasance,[2]
misfeasance,[3] neglect of duty,[4] drunkenness, incompetence, permanent inability to perform his official duties, or commission of a felony.[5] Therefore, I am impelled to conclude, in light of the express terms of s 7, Art. IV, the rules set forth in State ex rel. Hardie v. Coleman, supra, and the rules of constitutional construction discussed above, that s 7, Art. IV does not in express terms empower the Governor to suspend from office a state attorney solely on the ground that such officer has asserted the privilege against self-incrimination provided by theFifth Amendment before a federal grand jury.
In summary, the mere assertion, without more, before a duly seated federal grand jury of the privilege against self-incrimination provided by the Fifth Amendment of the United States Constitution, does not intrinsically establish a basis or ground for suspension from office of a state attorney by the Governor pursuant to s 7, Art. IV, State Const.
Sincerely,
Jim Smith Attorney General
Prepared by:
Anne Curtis Terry Assistant Attorney General
[1] The "causes" or grounds which would justify suspension are taken exactly from s 15, Art. IV of the 1885 Const., with one new basis added. Thus, cases decided under that prior version of the suspension power are useful precedents for the current s 7(a), Art. IV. See, In Re Advisory Opinion to the Governor,112 So.2d 843 (Fla. 1959); Crowder v. State ex rel. Baker, 285 So.2d 33, 34
(4 D.C.A.Fla., 1973).
[2] "Malfeasance" is defined in the Hardie case as referring to evil conduct or an illegal deed, or performance of an act by an officer in his official capacity that is wholly illegal or wrongful.
[3] "Misfeasance" is defined in Hardie, as referring to performance by officer in his official capacity of legal act in improper or illegal manner.
[4] See, State ex rel. Hardee v. Allen, 172 So. 222 (Fla. 1937) for discussion of an order of suspension in which "neglect of duty" was charged.
[5] Compare, Crowder v. State ex rel. Baker, supra, in which it was held that the statement of jurisdictional facts in support of the order were too vague and indefinite.